**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| United States of America,<br><br>   Plaintiff,<br><br>vs.<br><br>Julio de Armas Diaz, Alexis Torres Simon, Alexander Del Valle-Garcia,<br><br>   Defendants. | Case No.: 2:13-cr-00148-JAD-GWF<br><br>**Omnibus Order re Various Pretrial Motions [141, 144, 145 & 146]** |

Defendants Julio De Armas Diaz and Alex Torres Simon are accused[1] of running an organized retail theft crew that carried out a series of large-scale thefts of luxury purses, high-end jeans, shoes, and other items between October 2012 and April 2013. During this alleged crime spree, Diaz and Simon also stole medical supplies from two pharmaceutical vans whose drivers had left the doors unlocked. Simon formulated a plan to rob another pharmaceutical delivery van from the same company and kidnap its driver, and he recruited a confidential human source ("CHS"), along with Diaz and Alexander Del Valle Garcia to join him in the heist planned for the early morning of April 8, 2013.

That morning, Diaz and Simon drove together to a school parking lot near the intended victim's home. Garcia and the CHS arrived together in a separate vehicle at the planned meeting place. Before they could proceed to the target van, federal agents

---

[1] This section is included for background purposes only and is not intended as any finding of fact.

descended upon them, arrested them, and found a gun in Simon's car and a roll of duct tape and three pairs of gloves in Garcia's. Diaz, Simon, and Garcia were indicted for various conspiracy and theft-related offenses, and their joint trial is scheduled to begin on April 28, 2014.

In anticipation of trial, the parties filed numerous motions, including:

- Defendant Del Valle Garcia's Motion to Strike Count Three of the Indictment [Doc. 141];
- Objections re LR IB 3-1 for District Judge to Reconsider Order re 131 Order on Motion for Joinder and Order on Motion to Sever Defendant [Doc. 144];
- Defendant Torres Simon's Motion to Strike Counts Three and Five of the Superseding Indictment [Doc. 145]; and
- Motion for Judicial Notice of Times Zones [Doc. 146].

The Court addresses these four motions as follows:

**A.  Garcia's Objections re LR IB 3-1 for District Judge to Reconsider Order re 131 Order on Motion for Joinder and Order on Motion to Sever Defendant [Doc. 144]**

The Second Superseding Indictment charges Garcia, Simon, and Diaz for conspiracy to interfere with commerce by robbery (Count 1), attempted interference with commerce by robbery (Count 2), possession of a firearm in furtherance of a crime of violence (Count 3), and conspiracy to commit theft from interstate shipment (Count 7). Doc. 77.[2] Garcia moved to sever his trial from that of his co-defendant, Diaz, citing concerns that "spillover" evidence from Diaz's trial will prejudice him. He claimed that while Diaz allegedly operated an "organized retail theft crew" that committed a series of large-scale robberies, Garcia's involvement in the conspiracy began and ended in having the misfortune to make a detour while driving the CHS to his purported job interview. *See id.* Garcia pointed to the fact his

---

[2] Garcia is also charged separately with making a false statement (Count 4).

name "never appears once in the hundreds of pages of evidence that the FBI has accumulated regarding both Simon and Diaz." *Id.* at 8. He claimed he would be exposed to a considerable risk of prejudice if his trial is consolidated with that of Diaz and Simon, as the jury may improperly impute Diaz and Simon's activities to him. *Id.* at 2-3. In response, the government argued that Garcia's broad invocations of prejudice do not meet the standard for severance of joint trials and because many witnesses will overlap, judicial efficiency compels a joint trial here. Doc. 83 at 9-11.

After briefing was complete, Magistrate Judge Foley issued a 15-page denying Garcia's severance request, finding that the "spillover" evidence from Diaz and Simon would not unfairly prejudice Garcia. Doc. 131 at 1-3, 6-8. Garcia objects that Judge Foley erred in relying on *United States v. Douglass* as the basis for denying severance. He argues that *Douglass* charged a marginal defendant with participation in conspiracy that occurred over a two-day period, which is not the same sort of "open-ended conspiracy" alleged in the Second Superseding Indictment. *See id.* Instead, Garcia requests that the Court rely on *United States v. Donoway*, a Ninth Circuit case in which the panel found that the trial court erred in not severing a trial as to defendant Donaway where "less than 50 of the 2300 transcript pages in the government's case were relevant to Donaway." *See id.* He then claims that a similarly "great disparity" in the evidence the government has against Garcia, Diaz, and Simon makes a joint trial unduly prejudicial, thus justifying severance. *Id.*[3]

Criminal Rule 59(a) requires district judges to review timely objections to nondispositive pretrial orders issued by magistrate judges and to "modify or set aside any

---

[3] After Garcia filed his motion, Defendant Diaz filed a one-page motion for joinder to the severance motion, which added little detail. Doc. 93. The Government's response to both motions pointed out that Diaz's motion for joinder was untimely and should be stricken. Doc. 98. Judge Foley also denied Diaz's attempt to join Garcia's motion to sever, which raised a potential issue under *Bruton v. United States*, 391 U.S. 123 (1968). Doc. 131 at 8-14. Diaz did not object to Judge Foley's detailed and well-reasoned decision to deny his motion for joinder; however, as noted below he discussed Judge Foley's *Bruton* analysis in connection with one of his other pending motions.

part of the order that is contrary to law or clearly erroneous."[4]  The Court must consider all properly filed objections and either "modify or set aside any part of the order that is contrary to law or clearly erroneous."[5]

Under Rule 8(b), defendants may be joined in an indictment where "they are alleged to have participation in the same act or transaction, or in the same series of acts of acts or transactions, constituting an offense or offenses."[6]  Even if joinder is proper, Rule 14 permits the Court to order separate trials or provide other relief that justice requires if joinder "appears to prejudice a defendant or the government."[7]  Because there is some prejudice inherent in any joinder, however,[8] "[a] defendant must show clear, manifest or undue prejudice and violation of a substantive right resulting from the failure to sever."[9]  Rule 14 does not require severance even if prejudice is shown; rather, as an aspect of its "inherent right and duty to manage its own calendar,"[10] and the tailoring of any relief is left to the district court's sound discretion.[11]

The Ninth Circuit uses a four-part test to determine whether severance should be granted.  These factors are: "(1) whether the jury may reasonably be expected to collate and

---

[4] Fed. R. Crim. Proc. 59(a).

[5] *Id.*

[6] Fed. R. Crim. Proc. 8(b).

[7] Fed. R. Crim. Proc. 14(a).

[8] *United States v. Vaccaro*, 816 F.2d 443, 448-49 (9 th Cir. 1987), *aborgated on other grounds by* 485 U.S. 681 (1988).

[9] *United States v. Castro*, 887 F.2d 988, 996-97 (citations omitted).

[10] *United States v. Gay*, 567 F.2d 916, 919 (9th Cir.1978); *see United States v. Ponce*, 51 F.3d 820, 831 (9th Cir. 1995).

[11] *Zafiro*, 506 U.S. at 538-39 (1993).

appraise the individual evidence against each defendant; (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether [the defendant] could show, with some particularity, a risk that the joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."[12]  Thus, the test does not focus on the types of allegations made or the timing of any joint defendant's participation, but rather on the jury's ability to distinguish between facts.

        The jury's ability to distinguish between facts hinges not on the number of facts to be considered, but their substantive complexity.  In his order, Judge Foley relied on *United States v. Baker*, a drug-manufacturing-conspiracy case in which the Ninth Circuit considered whether severance should have been granted in a trial involving 15 defendants who were prosecuted under a 44-count indictment in a 16-month trial that involved more than 250 witnesses and 30,000 pages of transcripts.[13]  Even though the extraordinary circumstances in *Baker* caused the Ninth Circuit panel to remark that "we are called upon to consider . . . the practical and human limitations on our jury system itself,"[14] the panel found that the trial court properly denied a motion to sever, as "[a]lthough the jury had to evaluate a tremendous amount of evidence, the nature of the evidence and the legal concepts involved in the case were not extraordinarily difficult to comprehend, as they might be, for example, in a complex anti-trust case involving abstruse economic theories or an employment discrimination case

---

[12] *United States v. Fernandez*, 388 F.3d 1199, 1241 (9th Cir. 2004).

[13] *United States v. Baker*, 10 F.3d 1374 (9th Cir. 1993), *overruled on other grounds by* 225 F.3d 1053 (9th Cir. 2000).

[14] *Id.* at 1386.

involving technical statistical evidence and formulae."[15] Given that "[w]hen many defendants are tried together in a complex case and they have markedly different degrees of culpability, th[e] risk of prejudice is heightened,"[16] *Baker* strongly reinforces that the test for severance focuses on the jury's ability to compartmentalize the evidence, and that the court evaluates the jury's ability to compartmentalize against the substantive complexity of that evidence.

To the degree the nature of the charges themselves may factor into the criminal analysis, *Baker* is also on point, as it distinguishes Garcia's chosen case, *Donoway*, on grounds that, in *Donoway*, conspiracy charges against all but two defendants had been dismissed, whereas, in *Baker*, all defendants had been charged with conspiracy.[17] As Judge Foley pointed out, in this case Garcia, Diaz, and Simon have been charged with conspiracy, and his decision is neither contrary to law or clearly erroneous.

The Ninth Circuit has recognized that individuals who joined a conspiracy late may be tried along with allegedly more "involved" co-defendants,[18] so long as the jury can be reasonably expected to compartmentalize the evidence relating to each defendant.[19] The evidence in this case will relate to a series of discrete alleged thefts, from which the final conspiracy offense is entirely separate; Garcia points to no technical, scientific, complex evidence that would blur the boundaries between co-defendants. Judge Foley found that the jury could likely compartmentalize such discrete events, and this Court agrees. Garcia's

---

[15] *Id.* at 1388 (quoting *United States v. Casamento*, 887 F.2d 1141, 1150 (2d Cir. 1989)).

[16] *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

[17] *Baker*, 10 F.3d at 1389.

[18] *United States v. Uriarte*, 575 F.2d 215, 217 (9th Cir. 1978).

[19] *United States v. Ramirez*, 710 F.2d 535, 546 (9th Cir. 1983) (citations omitted).

objection that severance is inappropriate based on the disparity in the amount of potential evidence as between Garcia, Diaz, and Simon is overruled.

Even if some residual prejudice remains, the Court can largely purge it—as Judge Foley notes by an appropriate limiting instruction. Other courts considering "open ended" conspiracy charges have found limiting instructions an adequately safeguard. For example, in *United States v. Kats*, a series of individuals established a medical-insurance-fraud scam involving kickbacks for blood tests performed at a particular medical clinic and billed to private- and government-sponsored insurance plans.[20] Two of the defendants subsequently established an identical scheme at another clinic, for which a third defendant, Kats, purchased a 25 percent interest and began receiving payments.[21] The Ninth Circuit found that the trial court's decision to consolidate the trials of all defendants for both schemes "was not so manifestly prejudicial as to demand reversal,"[22] in part because the Court's "careful instructions to the jury were helpful in neutralizing any potential prejudice."[23] Garcia does dispute that a limiting instruction could cure any prejudice against him in the joint trial, even if the majority of the evidence is introduced during the government's prosecution of Diaz and Simon. The Court concurs in the propriety of fashioning a limiting instruction, the details of which can be provided to the jury at the appropriate time.

In sum, the Court finds that Judge Foley's order was not contrary to law or clearly erroneous, and Garcia's objections to Judge Foley's order denying his motion for severance are overruled.

---

[20] *United States v. Kats*, 871 F.2d 105, 106-07 (9th Cir. 1989).

[21] *See id.* at 107.

[22] *Id.* at 108.

[23] *Id.*

**B.     The Government's Motion for Judicial Notice of Time Zones [Doc. 146]**

The Government moves under Federal Rule of Evidence 201 for judicial notice of Coordinated Universal Time ("UTC"), as it relates to Pacific Standard Time, ("PST") as modified by Daylight Savings Time ("DST").  Doc. 146 at 1.  The government claims that some of the phone records it will introduce at trial are entered in UTC, as opposed to PST.  Thus, the government seeks judicial notice that (1) UTC is Coordinated Universal Time, (2) that standard times in the United States are offset from UTC by an integral number of hours; that (3) Las Vegas, Nevada is in the PST zone; (4) that Las Vegas, Nevada is UTC -7 during DST and UTC -8 when not in DST; (5) that DST in 2012 in Nevada was observed between March 11 to November 4; and (6) that DST in 2013 was observed in Nevada from March 13 until November 3.  *Id.* at 2.  The government supports its argument by introducing an online screenshot from the National Weather Service's National Hurricane Center, which purports to explain what UTC is and how conversions to other time zones operate.  Doc. 146-1.

Garcia's response objects only to "any attempt by the Government to testify as to phone calls in PST that were converted from UTC before adequate testimony regarding any conversion has been given."  Doc. 155 at 1.  He claims that "blanket conversions based on judicial notice" that Nevada was UTC -7 during DST does not establish the time at which any phone call took place.  *See id.*  Garcia also cautions that he will object to the introduction of the government's summary chart at trial.  *Id.* at 2.

Under Federal Rule of Evidence 201(b)(2), the court may take judicial notice of documents when "a fact is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[24]  The Court elects to take judicial notice of the fact that Las Vegas is in the PST zone, as well as the dates during which

---

[24] Fed. R. Evid. 201(b).

DST was observed in 2012 and 2013, under Rule 201(b)(1) because these are matters within the Court's territorial jurisdiction. As to the government's requests that UTC is Coordinated Universal Time, that standard times in the United States are offset from UTC by a number of hours, and Las Vegas, Nevada's particular offsets from UTC during DST, courts routinely take judicial notice of time zones and time zone differences under Rule 201(b)(2).[25] Moreover, as the government notes in its brief in support of the motion, numerous trial courts have taken judicial notice of times from the internet website www.timeanddate.com, including for requests to take notice of UTC and its offsets to US Standard Time.[26] The Court finds that the accuracy of the information contained at the www.timeanddate.com website, from which comparisons between UTC and PST can be drawn, is capable of ready verification and its accuracy cannot reasonably be questioned. Judicial notice of these three requests is appropriate under Rule 201(b)(2). The government's request for judicial notice is granted as to all six propositions.

    The Court notes that Garcia's objection to the government's request is inapplicable because the government has not actually asked the Court to either establish the time of any phone call, or sought to introduce the chart from the National Weather Service into evidence. *See* Doc. 155 at 2. Since Garcia does not contest any of the government's requests, including the number of hours by which UTC and PST diverge at different times of year, Garcia's objection essentially contests the court's taking "judicial notice" of a basic mathematical operation. The Federal Rules of Evidence "should be construed so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of

---

[25] *See, e.g.*, *Papenthien v. Papenthien*, 16 F. Supp. 2d 1235, 1241 (S.D. Cal. 1998).

[26] *See, e.g.*, *Ceglia v. Zuckerberg*, 2013 WL 1208558, at *49 (W.D.N.Y. Mar. 26, 2013); *Acevado Perez v. United States Government*, 899 F. Supp. 2d 90, 102 (D.P.R. 2012); *Cline v. City of Mansfield*, 745 F. Supp. 2d 773, 800 (N.D. Ohio 2010).

1  evidence law, to the end of ascertaining the truth and securing a just determination."[27]  The
2  Court intends to conduct the upcoming trial so as to eliminate unjustifiable expense and
3  delay, and that objections to the time conversion of every phone call has the potential to
4  unduly delay this trial.  The Court will address any objections to the specific time of a phone
5  call as they arise.  As those objections are not yet ripe for determination, the government's
6  motion for judicial notice [#146] is granted.

**C.    Garcia and Simon's Motions to Dismiss**

Alleging various theories, Garcia and Simon both move to "strike" several counts alleged against them in the Second Superseding Indictment.  Docs. 141, 143.  Motions to "strike" are properly limited to motions that seek to remove "surplusage," from an indictment, i.e., "language that describes elements beyond what is required under statute . . . and need not be proved at trial."[28]  Because Garcia and Simon's motions seek dismissal of entire substantive allegations, they go beyond removal of "surplusage" from an indictment and are thus not properly construed as motions to strike.  "The moving party's label for its motion is not controlling.  Rather, the court will construe it, however styled, to be the type proper for relief requested."[29]  The Court finds that both motions are more properly construed as motions to dismiss portions of the indictment.[30]

Under Fed. R. Crim. Proc. 7(c), "[t]he indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be

---

[27] Fed. R. Evid. 102.

[28] *Bargas v. Burns*, 179 F.3d 1207, 1216 n.6 (9th Cir. 1999); *see United States v. Fernandez*, 388 F.3d 1199, 1220-21 (9th Cir. 2004).

[29] *See United States v. 1982 Sanger 24' Spectra Boat*, 738 F.2d 1043, 1046 (9th Cir. 1984).

[30] *See United States v. Whittemore*, 2013 WL 1181915, at *1 (D. Nev. Mar. 19, 2013).

signed by an attorney for the government."[31]  Fed. R. Crim. Proc. 12(b) provides, "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue."[32]  This includes a motion to dismiss.[33]  When considering a motion to dismiss the indictment, the Court must take the indictment's allegations as true.[34]  "For an indictment to be valid, it must contain the elements of the offense to be charged, and sufficiently apprise the defendant of what he must be prepared to meet."[35]

### 1. Simon's Motion to Dismiss: Counts Three and Six[36] of the Second Superseding Indictment [Doc. 145]

Simon moves to dismiss Counts 3 and 6 of the Second Superseding Indictment.  Doc. 14.  In his three-page memorandum of law, Simon argues that Count 3, use of a firearm in furtherance of a crime of violence,[37] should be dismissed against him because although Simon used the word "timbre" (which can possibly mean "gun" in Cuban Spanish) during the April 7, 2013, Car Ride in which he, Diaz, and the CHS discussed the robbery, this reference is "completely out of context."  Doc. 145 at 4.  As to Count 6, felon in possession with a firearm,[38] Simon claims that there is no evidence that he knew the firearm was in his car.

---

[31] Fed. R. Crim. Proc. 7(c).

[32] Fed. R. Crim. Proc. 12(b).

[33] *See United States v. Schafer*, 625 F.3d 629, 635 (9th Cir. 2010).

[34] *United States v. Caicedo*, 47 F.3d 370, 371 (9th Cir. 1995).

[35] *United States v. Sharpe*, 438 F.2d 1257, 1263 (11th Cir. 2006); *See United States v. Ferguson*, 681 F.3d 826, 831 (6th Cir. 2012) (quoting *Sharpe*).

[36] Although Simon's motion refers to "Count 5," Simon is not actually charged in this Count in the Second Superseding Indictment.  Doc. 77 at 5.  Simon appears to seek dismissal of Count 6, which charges him with being a felon in possession of a firearm.  *Id.*  The Court evaluates his motion as to Count 6.

[37] 18 U.S.C. § 924(c)(1)(A) and (2).

[38] 18 U.S.C. § 922(g).

11

Doc. 145 at 4. The government responds that Simon's motion to dismiss challenges not the indictment but the sufficiency of the evidence the government has to prove its case against Simon, which is not a proper use of a motion to dismiss a criminal indictment. Doc. 154 at 1.

Simon's motion is procedurally defective. For example, it promises to attach a transcribed copy of the April 7, 2013, Car Ride as "Exhibit A," but it does not. In support of his Count 5 argument, Simon references, without citation to the record, bates-labeled pages of the Grand Jury Indictment without indicating where in the record they may be found.

Even if this Court reaches the merits of Simon's motion, it still fails. In most instances a pretrial motion, such as a motion to dismiss the indictment, is capable of determination before trial if it involves solely questions of law.[39] "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment."[40] "A defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence."[41] When considering evidence outside of the four corners of the indictment, the court in effect grants summary judgment in favor of one party, even though a summary judgment procedure is not available in criminal cases.[42] "[A] Rule 12(b) motion to dismiss is not the proper way to raise a factual defense."[43] Such challenges are properly brought as a judgment of acquittal under Fed. R. Crim. Proc. 29.[44] The Ninth Circuit broadly

---

[39] *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993).

[40] *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).

[41] *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996) (quotation omitted).

[42] *Id.* at 669 & n.2.

[43] *Nukida*, 8 F.3d at 669.

[44] *Id.* at 670.

construes any predicate issue that the government must prove in case-in-chief at trial as a question to be reserved for the jury.[45]

Simon challenges the government's ability to prove that he intended to possess a gun to carry to the April 8, 2013, attempted robbery, or used a gun during the robbery. This is not a challenge to the face of the indictment but one to the sufficiency of the government's evidence, and the Court declines to consider this challenge at this time and in this context. Upon review of the four corners of the indictment, the Court finds that Counts 3 and 6 are adequately pled. Simon's motion to dismiss [#145] is denied.

### 2. Garcia's Motion to Dismiss: Count Three of the Second Superseding Indictment [Doc. 141]

Garcia moves to dismiss Count three of the indictment, which charges him with possession of a firearm in furtherance of a crime of violence. Doc. 141.[46] He claims that federal agents found the gun in Simon's car during the sting operation, and the government never presented evidence to the grand jury that Garcia aided and abetted Simon and Diaz's possession of the gun used in furtherance of the attempted robbery. *See id.* at 1. The government admits that it did not present any such evidence to the grand jury, because it is not proceeding against Garcia on an aider-and-abetter theory, but on a *Pinkerton* liability theory, under which a defendant may be "liable for a substantive offense committed by a co-conspirator as long as the offense occurred within the course of the conspiracy, was within the scope of the agreement, and could reasonably have been foreseen as a necessary or natural consequence of the unlawful agreement." Doc. 153 at 1-2.[47] The government argues

---

[45] *See, e.g., Nukida*, 8 F.3d at 669-73.

[46] 18 U.S.C. § 924(c)(1)(A) and (2).

[47] The government cites *United States v. Alvarez-Valenzuela*, 231 F.3d 1198, 1202 (9th Cir. 2000) (citing *Pinkerton v. United States*, 328 U.S. 640, 647-48 (1946)).

that at trial, it will show that Garcia should have reasonably foreseen that a conspiracy to rob the van and kidnap its driver required use of a firearm. *Id.*

The Court may make "preliminary" findings of fact in the course of determining a pretrial motion to dismiss, so long as such findings do not "invade the province of the ultimate finder of fact."[48] This preliminary fact-finding process is appropriately reserved for issues collateral to determination of actual guilt or innocence in the pending criminal case, such as double jeopardy[49] or governmental misconduct.[50] A motion to dismiss claims of governmental misconduct because the government "flagrantly" misled the grand jury qualifies under the second exception.[51]

The court need not adjudicate Garcia's allegations of misconduct, however. The government now clarifies that no evidence was presented to the grand jury regarding Garcia's actual knowledge of the firearm because it intends to prosecute him under a theory of liability that requires the jury to make an inference about foreseeability.[52] The government cannot be faulted for failing to present evidence to the grand jury, or otherwise misleading the jury, when its theory of liability does not require presentation of any evidence. Garcia's motion to dismiss [#141] is denied.

## Conclusion

Accordingly, it is HEREBY ORDERED THAT:

---

[48] *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986).

[49] *See United States v. Zone*, 403 F.3d 1101, 1104 (9th Cir. 2005).

[50] *United States v. Irwin*, 612 F.2d 1182, 1187 (9th Cir. 1980).

[51] *United States v. Kennedy*, 564 F.2d 1329, 1338 (9th Cir. 1977).

[52] *See Pinkerton v. United States*, 328 U.S. 640, 647-48 (1946).

Defendant Del Valle Garcia's Motion to Strike Count Three of the Indictment **[Doc. 141] is DENIED.**

Defendant Del Valle Garcia's Objections re LR IB 3-1 for District Judge to Reconsider Order re 131 Order on Motion for Joinder and Order on Motion to Sever Defendant **[Doc. 144] are OVERRULED.**

Simon's Motion to Strike Counts Three and Five of the Superseding Indictment **[Doc. 145] is DENIED.**

The United States' Motion for Judicial Notice of Times Zones **[Doc. 146] is GRANTED.**

DATED: April 23, 2014.

_____
Jennifer A. Dorsey
United States District Judge